# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* A. A. COLE, Minor.

UNPUBLISHED
June 13, 2017

No. 335518
Wexford Circuit Court
Family Division
LC No. 15-025972-NA

Before: GADOLA, P.J., and TALBOT, C.J., and GLEICHER, J.

PER CURIAM.

The circuit court terminated respondent-mother's parental rights to her young daughter, who had been in foster care since birth, based on respondent's long history of drug addiction and repeated incarcerations. Although respondent diligently followed her treatment plan, there is still no indication that she will be able to provide proper care and custody for her child within a reasonable time. We affirm.

## I. BACKGROUND

Respondent has a long history of drug abuse and a significant criminal record marked by repeated incarcerations. She is also no stranger to the child protective system. Respondent gave birth to her first child, TC, in 2000. Child Protective Services (CPS) substantiated a claim against respondent based on drug use in 2005, and respondent received several years of services. CPS would have initiated a second proceeding against respondent in 2008, but she voluntarily arranged a guardianship for TC with his aunt.

Respondent spent a year before AAC's conception imprisoned for an unarmed robbery conviction. Respondent "did quite well" in the "first couple of months" following her release. When respondent discovered she was pregnant, however, she became overwhelmed and began actively using opiates. AAC was born with codeine, dilaudid, and morphine in her system and suffered withdrawal symptoms. AAC remained hospitalized for treatment and respondent was arrested because her confirmed drug use was a parole violation. The Department of Health and Human Services (DHHS) took AAC into care and placed her in a nonrelative foster home.

Respondent was released from jail 45 days later. During her brief stint of freedom, respondent engaged in three supervised parenting time sessions. Respondent was then arrested for selling heroin and admitted that she was using substances too. Respondent is now serving an 18-month to 30-year sentence and is housed in a residential treatment center. According to the

-1-

Michigan Offender Tracking Information System, respondent's earliest possible release date is June 20, 2017.

By all accounts, respondent has done well during her current incarceration. She has taken parenting classes, worked toward earning her GED, and actively engaged in substance abuse counseling and other rehabilitative services. Respondent's prospects upon release are more guarded, however. Respondent expressed that she intended to live with her mother upon release and earn a stipend from the state for serving as her mother's caretaker. Respondent's mother suffers from mental illness and, as a result, respondent spent time in the foster care system as a child. Respondent's counselor testified that respondent "would be at a risk for relapse" if she moved in with her mother because it could "re-traumatize[] her." The foster care caseworker agreed, opining that respondent's mother is not "a good influence on her."

The caseworker also noted that respondent had actively participated in services while incarcerated. However, she was concerned about respondent's ability to maintain sobriety upon her release. She emphasized that respondent "did well in an environment where she was supervised," but in the outside world, respondent had exhibited "a history of choosing substances, and other things, more than taking care of her children." Moreover, respondent would need to find suitable housing and employment before being able to care for her child. Demonstrating an ability to properly and safely care for AAC would take respondent "a minimum of a year" in the caseworker's opinion.

Based on this evidence, the circuit court terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j). Respondent appeals.

## II. STATUTORY GROUNDS

Respondent challenges the evidentiary support for the statutory termination grounds cited by the circuit court. Pursuant to MCL 712A.19b(3), a circuit court "may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence" that at least one statutory ground has been proven. The petitioner bears the burden of proving that ground. MCR 3.977(A)(3); *In re Trejo*, 462 Mich 341, 350; 612 NW2d 407 (2000). We review a circuit court's factual finding that a statutory termination ground has been established for clear error. *In re Rood*, 483 Mich 73, 90-91; 763 NW2d 587 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Moss*, 301 Mich App 76, 80; 836 NW2d 182 (2013) (quotation marks and citation omitted). "Clear error signifies a decision that strikes us as more than just maybe or probably wrong." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009).

The circuit court terminated respondent's parental rights under the following factors of MCL 712A.19b(3):

(c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:

(*i*)  The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

* * *

(g)  The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

* * *

(j)  There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

The circuit court clearly erred in relying upon factor (j) in terminating respondent's parental rights.  In this regard, the court emphasized that respondent would require an additional year or two of services after her prison release to be ready to care for AAC.  The court found that it would be harmful to AAC to remove her "from the only home [she] has ever known" at the age of three and four and place her for the first time with her mother.  The statute, however, guards against harm to the child "based on the conduct or capacity of the child's parent." Terminating a parent's rights based on the potential of harm simply because the child has aged while in care and would be most comfortable if he or she remained in that placement would unreasonably interfere with a parent's fundamental liberty interest "in the care, custody, and management" of his or her child.  See *Santosky v Kramer*, 455 US 745, 753; 102 S Ct 1388; 71 L Ed 2d 599 (1982).  And it runs contrary to the plain language of the statute.

Despite this error, relief is not warranted.  Termination under MCL 712A.19b(3) need be based on only one statutory ground.  Here, the circuit court properly found termination supportable under two.

Respondent did not rectify the conditions that led to adjudication and the DHHS established that she would be unable to do so within a reasonable time, supporting termination under factor (c)(*i*).  The court took jurisdiction over AAC based on respondent's long history of drug abuse and repeated incarcerations, which left her unable and unavailable to care for her child.  Respondent remained incarcerated 18 months later when the circuit court terminated her rights.  At termination, respondent's earliest release date was still eight months away.  Indeed, respondent remains incarcerated as of the issuance of this opinion.  There is no guarantee that respondent will be released on June 20, 2017.  Even if respondent is released on her earliest release date, respondent would require at least another year of services to establish her sobriety under real-world conditions.  This simply is not a reasonable time for AAC to wait in care. Accordingly, the circuit court did not clearly err in terminating respondent's parental rights on this ground.

Termination was also supportable under factor (g).  Respondent has never provided proper care or custody for AAC.  Respondent was arrested and incarcerated while AAC

-3-

remained in the hospital following her birth. Accordingly, the child was placed directly into foster care. Even if respondent is released on June 20, she will require at least another year to find suitable housing and employment and to continue her recovery from substance abuse. Respondent's only plan for employment and housing is to live with and care for her mother, a plan deemed unsuitable by respondent's counselor and the caseworker. As such, respondent will not be able to provide proper care and custody for AAC within a reasonable timeframe.

### III. BEST INTERESTS

Respondent further contends that termination of her parental rights was contrary to AAC's best interests. "Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App 35, 40; 823 NW2d 144 (2012), citing MCL 712A.19b(5). "[W]hether termination of parental rights is in the best interests of the child must be proven by a preponderance of the evidence." *Moss*, 301 Mich App at 90. The lower court should weigh all the evidence available to it in determining the child's best interests. *Trejo*, 462 Mich at 356-357. Relevant factors include "the child's bond to the parent, the parent's parenting ability, [and] the child's need for permanency, stability, and finality. . . ." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, [and] the children's well-being while in care. . . ." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). "With respect to the trial court's best-interests determination, we place our focus on the child rather than the parent." *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016), citing *Moss*, 301 Mich App at 87.

Here, the evidence preponderated in favor of termination. AAC shares no bond with her mother. Respondent has not seen her daughter since July 2015, and had only three visits with AAC before being incarcerated. AAC is doing "exceptionally well" in her foster care placement. The DHHS presented evidence that infants born addicted to controlled substances face many developmental obstacles. With the care of her foster mother, however, AAC was meeting her milestones. And AAC's foster parent wished to adopt her. Although respondent had actively engaged in services while incarcerated, her prognosis for success after release was guarded and speculative. Waiting for respondent to demonstrate sobriety would deny AAC needed permanency and stability. Accordingly, the circuit court properly determined that termination was in AAC's best interests.

We affirm.

/s/ Michael F. Gadola
/s/ Michael J. Talbot
/s/ Elizabeth L. Gleicher

-4-